UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANOVER INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL FINNEGAN ELECTRIC CONTRACTING, INC., MICHAEL A. FINNEGAN, and CORINNE FINNEGAN,<br><br>Defendants. | CIVIL ACTION NO.<br><br>**05-40089 FDS** |

## COMPLAINT

The Plaintiff, Hanover Insurance Company ("Hanover" or "Surety"), states and alleges for a cause of action against the Defendant as follows:

### PARTIES

1. The Plaintiff, Hanover, is incorporated in New Hampshire with a principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653.

2. The Defendant, Michael Finnegan Electric Contracting, Inc. ("Finnegan"), upon information and belief, is a Connecticut corporation with a principal place of business at 130 Commerce Way, South Windsor, Connecticut 06074.

3. The Defendant, Michael A. Finnegan, upon information and belief, resides at 83 Windy Hill Drive, South Windsor, Connecticut 06074.

4. The Defendant, Corinne Finnegan, upon information and belief, resides at 83 Windy Hill Drive, South Windsor, Connecticut 06074.

RECEIPT # 404583
AMOUNT $ 250
SUMMONS ISSUED 3
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED
BY DPTY. CLK. KH
DATE 6-6-05

## JURISDICTION

5. Jurisdiction is founded on diversity of citizenship and amount in controversy. The matter in controversy exceeds, exclusive of interest, the sum of $75,000.00

## BACKGROUND

6. At all times relevant to this action, Hanover has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

7. On or about April 9, 2004, Finnegan, Michael Finnegan and Corinne Finnegan (hereinafter collectively referred to as "Defendants" or "Indemnitors") executed an agreement of indemnity (the "Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

8. The Indemnity Agreement provides that the Indemnitors "agree to pay to the Surety all loss, costs, damages, and expenses of whatsoever kind and nature, including court costs, reasonable attorneys' fees (whether Surety at is sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned."

9. As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, Hanover, as surety, executed a payment and performance bond (Bond No. BCE1731538) (the "Bond") at the request and on behalf of Michael Finnegan Electric, as Principal, to secure the performance of Finnegan on the project known as Watkins Motor Lines, Windsor Locks, Connecticut (the "Project").

10. The project was in its final stage of completion when the Principal and Indemnitors acknowledge that the Principal was (a) financially unable to pay certain subcontractors and suppliers for labor and/or materials with respect to the contract and the project; (b) financially unable to provide release of lien bonds for certain mechanics liens that were filed against the owner of the project; and (c) as a result of a and b above, the Principal has defaulted under the terms of the General Indemnity Agreement.

11. As a direct and proximate result of the foregoing claims on the bond, Hanover received payment bond claims in excess of $400,000 and may sustain future losses in the form of consultant fees, attorneys' fees and other expenses.

## COUNT I - INDEMNITY

12. Hanover repeats and incorporates by reference the allegations contained in paragraphs 1 through 12 as if set forth at length here.

13. As a direct result of Hanover's execution of the Bond on behalf of its principal, Finnegan, and at the request of the Defendants, and based on performance and payment bond claims related thereto, Hanover is sustaining losses in the investigation, defense, and payment of same, and anticipates sustaining further losses in prosecuting this action.

14. Pursuant to the express terms of the Indemnity Agreement, the Defendants are required to hold Hanover harmless from all losses, costs and expenses incurred in connection with the claims on the Bond.

15. As a result, the Defendants are liable, as Indemnitors, to Hanover for all losses, costs, and expenses incurred in relation to any claims on bonds Hanover issued on behalf of Finnegan.

## COUNT II - BREACH OF CONTRACT

16. Hanover repeats and incorporates by reference the allegations contained in paragraphs 1 through 15 as if set forth at length here.

17. The Indemnity Agreement, executed by the Defendants, provides that "In addition, the Undersigned agree to pay to the Surety . . . an amount sufficient to discharge any claim made against Surety on the Bond. This sum ma be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond."

18. The Defendants' failure to indemnify Hanover in accordance with the terms of the Indemnity Agreement constitutes a breach of the Indemnity Agreement for which the Defendants are liable.

## COUNT III - SPECIFIC PERFORMANCE

19. Hanover repeats and incorporates by reference the allegations contained in paragraphs 1 through 18 as if set forth at length here.

20. Pursuant to Hanover's common law rights, as well as its rights set forth in the Indemnity Agreement, the Defendants are required to collateralize and hold Hanover harmless from any and all loss, costs or expenses, including attorneys' fees and interest.

21. The Defendants have failed to indemnify Hanover for its losses, costs, expenses and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Hanover Insurance Company, as surety, requests that this Court enter a Judgment against the Defendants, jointly and severally; (1) requiring the Defendants to

immediately reimburse Hanover for all incurred losses, plus interest, costs, attorneys' fees and any other incurred expense; (2) to provide collateral to Hanover in an amount necessary to properly protect it against any and all claims filed against the bond; and (3) all other relief to which Hanover is entitled.

>Respectfully Submitted,
>By his attorneys,
>
>Bert J. Capone, BBO#072880
>Paula-Lee Chambers, BBO#566888
>CETRULO & CAPONE, LLP
>Two Seaport Lane, 10th Floor
>Boston, MA 02110
>(617) 217-5500

Dated: June 2, 2005

# EXHIBIT A



### The Hanover Insurance Company                Massachusetts Bay Insurance Company

## AGREEMENT OF INDEMNITY

WHEREAS, at the request of the undersigned, for themselves, their heirs, executors, administrators, successors and assigns (hereafter referred to as "Indemnitors"), and upon the express understanding that this Agreement be executed, The Hanover Insurance Company and/or Massachusetts Bay Insurance Company, 100 North Parkway, Worcester, Massachusetts 01605, and their affiliates, successors, assigns and any subsidiary companies (hereafter individually and collectively referred to as "Surety") has executed, or may in its discretion hereafter execute certain surety contracts, undertakings, and/or other instruments of guarantee or indemnity, and any continuation, extension, amendment, alteration, renewal or substitution thereof (hereafter collectively referred to as "bond" or "bonds") on behalf of the Indemnitors or any one or more of the Indemnitors, in which bonds the Indemnitors hereby affirm they have a substantial, material and beneficial interest.

NOW, THEREFORE, in consideration of the premises, and of the execution or continuance of such bonds, the Indemnitors, jointly and severally, hereby covenant and agree in favor of the Surety as follows.

1. The Indemnitors will promptly pay or cause to be paid in cash to the Surety in advance, or if not in advance, in such manner as may be agreed upon, all premiums and charges of the Surety for such bonds at the rates and times specified by the Surety, and will continue to pay the same where such bonds are continued until the Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from such bonds and all liability by reason thereof.

2. The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:

   (a) by having executed or procured the execution of the bonds; or
   (b) in making an independent investigation of any claim, demand, or suit; or
   (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or
   (d) in enforcing any of the covenants, terms and conditions of this Agreement.

3. Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit; or b) if the amount asserted as a claim, demand, or suit is an unascertainable or unliquidated amount, the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit. The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor.

4. With respect to each bond executed by the Surety in connection with a contract, the Surety is hereby authorized, in its sole discretion, to make or guarantee advances or loans for the purpose of the contract without the necessity of seeing to the application thereof, and the Indemnitors agree both that all such loans and advances, unless repaid with legal interest by the Indemnitors to the Surety when due, shall be conclusively presumed to be an indemnity obligation of the Indemnitors to the Surety, and that the Surety shall have the absolute right to cease making or guaranteeing advances or loans at any time and without notice to the Indemnitors.

5. With respect to each bond executed by the Surety in connection with a contract, the Indemnitors hereby assign, transfer, convey and set over to the Surety:

   (a) all right, title and interest of the Indemnitors in and to all tools, plants, equipment and materials of every nature and description that may now or hereafter be upon the site of the contracted work or elsewhere for the purpose of the contract; and
   (b) all right, title and interest of the Indemnitors in and to the contract including all rights in and to all subcontracts or purchase orders let or to be let in connection therewith; and
   (c) all monies retained, due, or due in the future on account of any contract, whether bonded or unbonded, in which any or all the Indemnitors have an interest; and

(d) all right, title and interest of or in any license, patent, trademark or copyright held by Indemnitors in connection with contracted work or required for the completion of any contract.

The assignments shall be effective as of the execution dates of the bonds, but only enforceable upon the occurrence of one or more of the events described in Paragraph 6(a-f).

6. In the event the Indemnitors, or any one or more of them, shall: (a) whether actually or allegedly (as declared by the obligee or owner), delay, default, abandon, forfeit or breach any contract secured by a bond, or (b) fail, neglect, or refuse in any manner to timely pay for any labor or material used in the prosecution of any contract secured by a bond, or (c) change its character, identity, control, beneficial ownership, or existence, or (d) fail to perform, or comply with any of the terms, covenants, or obligations of this Agreement, including, but not limited to, prompt payment of any amount due under this Agreement, or (e) make an assignment for the benefit of creditors, or have any proceedings instituted against them, or any one or more of them, alleging insolvency or involving the appointment of a receiver or trustee whether such Indemnitor(s) is/are insolvent or not, or (f) have proceedings instituted against any of the Indemnitors which have the effect of depriving any of them of the use of any part of the equipment used in connection with any contract work so as to hinder, delay, or impede the normal and satisfactory progress of the work, then the Surety, in its sole discretion, shall have the right, but not the obligation, to take possession of the work under the contract and any other contract, in connection with which the Surety has issued a bond or bond(s) and, at the expense of the Indemnitors, to complete, to arrange for completion, or to agree to the re-letting or completion by the obligee or owner of the contract work.

7. The Indemnitors covenant and agree that all funds due or to become due under any contract secured by a bond, whether in the possession of any Indemnitor or others, are held in trust for the benefit and payment of all obligations incurred in the completion of said contract for which the Surety would be obligated under the bond. The trust shall inure for the benefit of the Surety for any liability or loss under any bond, and this Agreement shall constitute notice of such trust.

8. The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any bond is completely terminated and the claims of the Surety against any Indemnitor are fully satisfied.

9. The Indemnitors irrevocably appoint the Surety as their attorney-in-fact with the power, authority and right to exercise all of the rights of the Indemnitors, or any of one or more of them, which are assigned, transferred and set over to the Surety under this Agreement, or otherwise, including, but not limited to: (a) the right to take possession of all funds due or to become due under any contract and to endorse, in the name of the Indemnitors, or any one or more of them, any check, draft, warrant, or other instruments made or issued in payment of such funds, and to disburse the proceeds thereof for the purposes of the trust provided in Paragraph 7, or in such manner which exonerates, holds harmless, and indemnifies the Surety, (b) the right to execute any other agreements or documents which the Surety, in its sole discretion, deems necessary to vest it in the title, property, and/or funds assigned by the Agreement, or otherwise, and (c) the right in its name or in the name of the Indemnitor(s), but not the obligation, to pursue, prosecute, compromise, release, or otherwise resolve any of the claims, causes of action or other rights assigned, upon such terms as the Surety, in its sole discretion, shall deem appropriate.

10. This Agreement shall constitute a Security Agreement of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, or under law, or in equity. A copy or reproduction of this Agreement may be filed as a Financing Statement.

11. The Surety may decline to execute any bond (including those for which any application was submitted, any bid or proposal bond was issued by the Surety, or otherwise) without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

12. The Surety may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors, or any entity bonded or insured by the Surety, may have against the Surety.

13. The Indemnitors waive, to the extent permitted by law, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession of the United States.

14. The Indemnitors agree to keep themselves fully informed as to the business and financial affairs of each of the other Indemnitors so that the Indemnitors are aware of the risks and hazards of continuing as Indemnitors. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning its rights or liabilities under any bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

15. The Surety, in its sole discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any bond, and any renewal or other obligation in place or in lieu thereof, or of any contract (or any plans and specifications relating thereto) secured by any bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

16. In the event the Surety procures the execution of the bonds by other sureties, or executes the bonds with co-sureties, or reinsures any portion of said bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties.

17. No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every

right, power and remedy given herein to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitor, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole discretion.

18. The liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any bond, nor by the failure of any Indemnitor to receive notice of the execution of any bond, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

19. If any provision or provisions of this Agreement are deemed void or unenforceable under any jurisdiction governing its construction, this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

20. The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.

21. This Agreement may be terminated as to any Indemnitor upon 20 days' written notice sent by registered or certified mail to the Surety at its home office at 100 North Parkway, Worcester, Massachusetts, 01605, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the bonds that may have been executed prior to such termination.

22. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

23. This Agreement applies to bonds written by the Surety at the request of or on behalf of the Indemnitors and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

IN WITNESS WHEREOF, the Indemnitors who are individuals have hereunder set their hands and seals, and the Indemnitors which are partnerships, corporations or unincorporated associations have caused the Agreement to be duly executed by their authorized representatives on this __9th__ day of __April__, in the year of __2004__.

Address: 130 Commerce Way, South Windsor, CT 06074
SS# or Fed. Tax ID #: 06-1243514

Indemnitor: Michael Finnegan Electrical Contracting, Inc.
(Full Name of Indemnitor)
By: _[signature]_
(Signature and Title) Michael A. Finnegan, President
Date of Birth (if individual): 10/7/60

Address: 83 Windy Hill Dr., South Windsor, CT 06074
SS# or Fed. Tax ID #: 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

Indemnitor: Michael Finnegan
By: _[signature]_
Date of Birth: 10/7/60

Address: 83 Windy Hill Dr., South Windsor, CT 06074
SS# or Fed. Tax ID #: 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

Indemnitor: Corinne Finnegan
By: _[signature]_
Date of Birth: 6-12-61

Address: _____
SS# or Fed. Tax ID #: _____

Indemnitor: _____
By: _____
Date of Birth: _____

Instructions: If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.
This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ...Connecticut...

COUNTY OF ...Hartford... SS

On this ...12th... day of ...April..., in the year ...2004..., before me personally came ...Michael Finnegan and Corinne Finnegan..., to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ....he executed the same.

Notary Public: ...Christopher Davis...
Address and telephone no.: ...986 Pleasant Valley Road S.W. 610-00...
Commission expires: ...........

Christopher Davis, Notary Public
State of Connecticut
My Commission Expires 3/31/2008

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF ............

COUNTY OF ............ SS

On this ............ day of ............, in the year ............, before me personally came ............, to me known and known to me to be one of the firm of............ and acknowledged to me that ....he executed the foregoing instrument as the act of said firm.

Notary Public: ............
Address and telephone no.: ............
Commission expires: ............

## CORPORATE ACKNOWLEDGMENT

STATE OF ...Connecticut...

COUNTY OF ...Hartford... SS

On this ...12th... day of ...April..., in the year ...2004..., before me personally came ...Michael Finnegan..., to me known, who, being by me duly sworn, deposes and says that .....he resides in ...Connecticut..., that ....he is the ...President... of ..Michael Finnegan Electrical Contracting, Inc... the corporation described in and which executed the foregoing instrument; that ....he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that ....he signed h.... name thereto by like order.

Notary Public: ...Christopher Davis...
Address and telephone no.: ...986 Pleasant Valley Road S.W. 610-0003...
Commission expires: ............

Christopher Davis, Notary Public
State of Connecticut
My Commission Expires 3/31/2008

141-0714A (1/97)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**05-40089 FDS**

1. Title of case (name of first party on each side only) Hanover Insurance Company v. Michael Finnegan Electric Contracting, Inc., Michael A. Finnegan and Corinne Finnegan

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [✓] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases
   - [✓] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [✓]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]   NO [✓]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [✓]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Paula-Lee Chambers
ADDRESS   Cetrulo & Capone, LLP, 2 Seaport Lane, Boston, MA 02210
TELEPHONE NO.   (617) 217-5238

(CategoryForm.wpd - 5/2/05)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Hanover Insurance Company

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Paula-Lee Chambers, Esquire Cetrulo & Capone, LLP, Two Seaport Lane, 10th Floor, Boston, MA 02210 (617) 217-5238

## DEFENDANTS
Michael Finnegan Electric Contracting, Inc., Michael A. Finnegan and Corinne Finnegan

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

05-40089 FDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332 Diversity

Brief description of cause:
The Surety seeks recovery of contract fund balances due and owing under the Performance Bond.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 06/02/2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____